In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3396

MERRILL C. ROBERTS,

*Petitioner-Appellant*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

Appeal from the United States Tax Court.
No. 12010-11 — **Elizabeth C. Paris**, *Judge*.

ARGUED APRIL 1, 2016 — DECIDED APRIL 15, 2016

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. The Internal Revenue Code allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). But if the activity giving rise to the expenses "is not engaged in for profit," section 183 permits deduction of expenses incurred in the activity "only to the extent that the gross income derived from such activity [i.e., the not-for-profit activity] for the taxable

year exceeds the deductions." 26 U.S.C. § 183(a), (b)(2). The activities governed by section 183 are usually referred to as "hobbies," and the provisions we've just quoted allow hobby expenses to be deducted from hobby profits but not from any other income that the taxpayer may have.

A provision specific to horse racing states that "in the case of an activity which consists in major part of the breeding, training, showing, or racing of horses," "if the gross income derived from an activity for [2] or more of the taxable years in the period of [7] consecutive taxable years which ends with the taxable year exceeds the deductions attributable to such activity (determined without regard to whether or not such activity is engaged in for profit), then … such activity shall be presumed … for such taxable year to be an activity engaged in for profit." 26 U.S.C. § 183(d). But this presumption does not figure in the present case because the taxpayer's horse-racing operation yielded no profits in any of the four years covered by the trial record, or, so far as appears, in any preceding years (except very small profits in 1999).

In 2014 the Tax Court held that the taxpayer, petitioner Merrill Roberts, had deducted the expenses of his horse-racing enterprise on his federal income tax returns for 2005 and 2006 erroneously because the enterprise was a hobby rather than a business. The court assessed tax deficiencies of $89,710 for 2005 and $116,475 for 2006. But it also ruled that his business had ceased to be a hobby, and had become a bona fide business, in 2007, and the Internal Revenue Service has not challenged Roberts' bona fides since, as far as we know. Though now in his seventies, he continues to operate

his horse-racing business. His appeal challenges the assessments for 2005 and 2006.

From 1969, when he was about 28, to the mid-1990s, Roberts, who is a Hoosier, grew to be a successful owner and operator of restaurants, bars, and nightclubs in Indianapolis. He began withdrawing from the business in the mid-1990s, though he remained a paid consultant to the new owners. In 1998 or 1999 a thoroughbred racehorse association invited him to a dinner and to a tour of a race track facility, trying to interest him in entering the horse-racing business. His interest aroused, in 1999 he bought his first two horses, for $1000 each, and in the first year netted $18,000 in earnings from racing them. He also built a horse track on land that he owned in Indianapolis. Two years later his stock of racing horses had increased to 10 and he also had acquired a breeding stallion. The following year he passed the state's licensed-trainer test (a test described as "rigorous" by the Tax Court) and obtained his horse-training license.

In 2005 he decided to build a bigger and better horse-training facility on his land. But encountering opposition from the City of Indianapolis, he abandoned that idea and instead in the following year bought a much larger (180-acre) tract of land called the "Mooresville property" for about $1 million. Between the acquisition of the new land and the end of the year he invested between $500,000 and $600,000 in improvements for the training of racehorses on his property. He trained the horses himself (remember that he'd become a licensed horse trainer)—he even bathed them himself. He stated without contradiction that he spent 12 hours a day working with the horses on race days and about 8 hours a day on other days. He was also involved (though

peripherally) in lobbying the Indiana legislature on behalf of horse racing. The goal of the lobbying, achieved in 2007, was legislation that would permit slot machines at racetracks. Because part of the revenue generated by the slot machines would be added to the purse money (the money received by owners of horses that win races), Roberts could expect to benefit financially from the advent of the slot machines. In the same period he served on the boards of two professional horse-racing associations in what the Tax Court's opinion describes as "leadership roles."

Roberts' horse-racing activities, which included boarding, breeding, training, and racing horses—racing them not only in Indiana but also in other states, particularly Kentucky—were not profitable in the two-year period that is the focus of his appeal. In 2005 his expenses exceeded his earnings by $153,420. The loss declined to $30,604 in 2006 but increased to $98,251 in 2007 and to $291,888 in 2008—though it's important to bear in mind that 2007 and 2008 are not involved in the appeal. He deducted the losses on his tax returns from his other income, mainly income from consulting in the restaurant business and from renting and selling real estate.

The record ends in 2008, when Roberts had a considerable loss owing to his horses' being quarantined for much of the race season. Apparently the Internal Revenue Service has challenged no deductions of expenses of his horse-racing business that Roberts began taking in 2007.

The Tax Court's ruling that Roberts' horse-racing enterprise was a hobby in 2005 and 2006 but became a business in 2007 and remained so in 2008, and apparently has been one in every year since given the IRS's failure to challenge his

horse-racing deductions for any year since 2008, is untenable; it amounts to saying that a business's start-up costs are not deductible business expenses—that every business starts as a hobby and becomes a business only when it achieves a certain level of profitability. Yet Roberts' 2007 "business" (conceded to be such by the Tax Court) did not begin that year, but rather evolved from his decision in 2005 to build a larger training facility and his attempt to do so on his existing property (which however the City of Indianapolis prevented); the large land purchase that he had made in 2006; and the improvements (enabled by the purchase) in his horse-training facility that he had made that year. The Tax Court's finding that his land purchase and improvements were irrelevant to the issue of profit motive until he began using the new facilities is unsupported and an offense to common sense. He intended the land and improvements for his horse-racing *business*, and intent to make a profit is what makes an activity a business. The fact that he became involved in horse racing because he was greatly reducing his involvement in his original business (thus signaling a career change), and the further fact that he assisted in lobbying designed to increase the profitability of horse racing, also contradict the hobby hypothesis.

The Tax Court acknowledged that "the startup phase and unforeseen expenses balance the history of large losses, and [therefore that] this factor [the losses] is neutral for all tax years in issue," and that "by tax year 2005 petitioner devoted time and effort appropriate to demonstrate a profit objective for *all* the tax years in issue" (emphasis added). We cannot square these statements with the court's decision. For imagine a person who wants to profit from being a landlord but must take two years to acquire land and build the building.

No one would say that his rental business was a "hobby" for the first two years because no tenant could move in and as a result he could obtain no income and thus no profit until year three. But that's what the Tax Court ruled in this case.

Remarkably in light of its ultimate ruling, the court said that "petitioner did not purchase the [Mooresville] property [in 2006] to have a place to enjoy the golden years of his retirement but instead purchased the property *to run a business*" (emphasis added). Inconsistently the opinion later states that "petitioner's profit objective was first shown in 2007 when he began operating his horse-related activities at the Mooresville property." The judge seems not to have understood that the decision to build the facility, and its construction, are also indications of a profit motive.

Further undermining its conclusion, the court remarked that the "petitioner knew that prize purses were increasing in Indiana. In other words, the ultimate profit potential would significantly increase. Further, one of petitioner's horses was nominated to run in the Triple Crown Races, showing that his horses have the potential to race at a very high level and possibly earn significant profits. Accordingly, petitioner's expectation of future profits was *consistent with the existence of a profit objective for all the tax years in issue*" (emphasis added; footnote omitted). This was the same point the court had made in a passage we quoted earlier (though the court might have qualified it by noting that if prize purses were increasing, this might attract more competition in horse racing, which might lower profits). "All the tax years in issue" include of course 2005 and 2006.

We mustn't be too hard on the Tax Court. It felt itself imprisoned by a goofy regulation (26 C.F.R. § 1.183–2, Treas.

Reg. § 1.183–2: Activity Not Engaged in for Profit Defined;
see, e.g., *Faulconer v. Commissioner*, 748 F.2d 890 (4th Cir.
1984)) that we feel bound to set forth in its full tedious
length:

(b) *Relevant factors*. In determining whether an activity
is engaged in for profit, all facts and circumstances with
respect to the activity are to be taken into account. No one
factor is determinative in making this determination. In
addition, it is not intended that only the factors described
in this paragraph are to be taken into account in making
the determination, or that a determination is to be made on
the basis that the number of factors (whether or not listed
in this paragraph) indicating a lack of profit objective ex-
ceeds the number of factors indicating a profit objective, or
vice versa. Among the factors which should normally be
taken into account are the following:

(1) *Manner in which the taxpayer carries on the activity*.
The fact that the taxpayer carries on the activity in a busi-
nesslike manner and maintains complete and accurate
books and records may indicate that the activity is en-
gaged in for profit. Similarly, where an activity is carried
on in a manner substantially similar to other activities of
the same nature which are profitable, a profit motive may
be indicated. A change of operating methods, adoption of
new techniques or abandonment of unprofitable methods
in a manner consistent with an intent to improve profita-
bility may also indicate a profit motive.

(2) *The expertise of the taxpayer or his advisors*. Prepara-
tion for the activity by extensive study of its accepted
business, economic, and scientific practices, or consultation
with those who are expert therein, may indicate that the
taxpayer has a profit motive where the taxpayer carries on
the activity in accordance with such practices. Where a

taxpayer has such preparation or procures such expert advice, but does not carry on the activity in accordance with such practices, a lack of intent to derive profit may be indicated unless it appears that the taxpayer is attempting to develop new or superior techniques which may result in profits from the activity.

(3) *The time and effort expended by the taxpayer in carrying on the activity*. The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit. A taxpayer's withdrawal from another occupation to devote most of his energies to the activity may also be evidence that the activity is engaged in for profit. The fact that the taxpayer devotes a limited amount of time to an activity does not necessarily indicate a lack of profit motive where the taxpayer employs competent and qualified persons to carry on such activity.

(4) *Expectation that assets used in activity may appreciate in value*. The term profit encompasses appreciation in the value of assets, such as land, used in the activity. Thus, the taxpayer may intend to derive a profit from the operation of the activity, and may also intend that, even if no profit from current operations is derived, an overall profit will result when appreciation in the value of land used in the activity is realized since income from the activity together with the appreciation of land will exceed expenses of operation. See, however, paragraph (d) of § 1.183–1 for definition of an activity in this connection.

(5) *The success of the taxpayer in carrying on other similar or dissimilar activities*. The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate

that he is engaged in the present activity for profit, even though the activity is presently unprofitable.

(6) *The taxpayer's history of income or losses with respect to the activity*. A series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, as due to customary business risks or reverses, may be indicative that the activity is not being engaged in for profit. If losses are sustained because of unforeseen or fortuitous circumstances which are beyond the control of the taxpayer, such as drought, disease, fire, theft, weather damages, other involuntary conversions, or depressed market conditions, such losses would not be an indication that the activity is not engaged in for profit. A series of years in which net income was realized would of course be strong evidence that the activity is engaged in for profit.

(7) *The amount of occasional profits, if any, which are earned*. The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's intent. An occasional small profit from an activity generating large losses, or from an activity in which the taxpayer has made a large investment, would not generally be determinative that the activity is engaged in for profit. However, substantial profit, though only occasional, would generally be indicative that an activity is engaged in for profit, where the investment or losses are comparatively small. Moreover, an opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for

profit even though losses or only occasional small profits are actually generated.

(8) *The financial status of the taxpayer*. The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit. Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved.

(9) *Elements of personal pleasure or recreation*. The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved. On the other hand, a profit motivation may be indicated where an activity lacks any appeal other than profit. It is not, however, necessary that an activity be engaged in with the exclusive intention of deriving a profit or with the intention of maximizing profits. For example, the availability of other investments which would yield a higher return, or which would be more likely to be profitable, is not evidence that an activity is not engaged in for profit. An activity will not be treated as not engaged in for profit merely because the taxpayer has purposes or motivations other than solely to make a profit. Also, the fact that the taxpayer derives personal pleasure from engaging in the activity is not sufficient to cause the activity to be classified as not engaged in for profit if the activity is in fact engaged in for profit as evidenced by other factors whether or not listed in this paragraph.

Notice in the introductory paragraph (the one labeled "Relevant factors") that "No one factor is determinative" and that not "*only* the factors described in this paragraph are

to be taken into account in making the determination" (emphasis added) whether the taxpayer's activity is a business or a hobby. In other words, the test is open-ended—which means that the Tax Court was not actually required to apply all of those factors to Roberts' horse-racing enterprise. It could have devised its own test, with its own factors, as long as it explained why the factors that "should normally be taken into account" were insufficient.

Notice too that the factors in the Treasury Regulation overwhelmingly favor Roberts' claim that even in 2005 and 2006 his horse-racing enterprise was a business. He conducted it in a businesslike way (factor 1). He prepared by extensive study (to obtain a training license) (factor 2). He largely withdrew from his previous businesses in order to devote "most of his energies" to his horse-racing enterprise (factor 3). He expected to derive an eventual profit from the enterprise, including profit in the form of appreciation of the value of the land and buildings used in the enterprise (factor 4)—it's not as if he were a billionaire indifferent to the modest profit that probably was all he could expect from horse racing. Entering the restaurant business on a small scale in his twenties, Roberts had suffered setbacks that prevented his business from being an immediate success—indeed his first restaurant burned down and the insurance settlement was too small to enable him to rebuild it as a full-service establishment. Yet he "grew" the business to large dimensions over time, a pattern consistent with his attempting to repeat the process in his horse-racing venture in 2005 and 2006 (factor 5). "A series of losses during the initial or start-up stage of the activity may not necessarily be an indication that the activity is not engaged in for profit" (factor 6)—that's this case, all right. A "substantial profit, though only occasional,

would generally be indicative that an activity is engaged in for profit" (factor 7). The Tax Court awarded this factor to Roberts because he earned money from racing his first two horses and the growth in the prize purses (owing to the slot machines) could be expected to increase his income in the future; that one of his horses was nominated to run in the Triple Crown Races suggested that his horses might eventually achieve greater success.

"The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit" is factor 8. In 2005 and 2006 Roberts reported adjusted gross income of $297,881 and $1,359,339 even after deducting his horse-racing losses, but he happened to have sold a large piece of land in 2006, and the Tax Court found that he is "not an excessively wealthy individual." The court concluded that this factor favored the IRS, but we believe the existence of other income has little weight when many other factors indicate a profit objective.

As for the last factor—"the availability of other investments which would yield a higher return, or which would be more likely to be profitable, is not evidence that an activity is not engaged in for profit. An activity will not be treated as not engaged in for profit merely because the taxpayer has purposes or motivations other than solely to make a profit. Also, the fact that the taxpayer derives personal pleasure from engaging in the activity is not sufficient to cause the activity to be classified as not engaged in for profit if the activity is in fact engaged in for profit as evidenced by other factors whether or not listed in this paragraph." This is sensible since obviously many businessmen derive pleasure,

self-esteem, and other nonmonetary "goods" from their businesses, and horse racing is just the kind of business that would generate such "goods" for participants such as the owners and trainers (Roberts is both) of the horses.

About factor 9 the court added that "there is likely no profit objective where the taxpayer combines horse racing with social and recreational activities." That is contrary to what factor 9 says, and in addition no social or recreational activities engaged in by Roberts are listed, let alone de-scribed, by the court. The court does say that "petitioner's involvement with the professional horse racing associations demonstrates that he engaged in some social aspect of the industry," but that's like saying that serving on a corporate board of directors is a "social" activity.

So: nine factors—all actually either supportive of or at least consistent with Roberts' claim that his horse-racing en-terprise even as early as 2005 was a business, not a hobby. It may have been a fun business, but fun doesn't convert a business to a hobby. If it did, Facebook would be a hobby, Microsoft and Apple would be hobbies, Amazon would be a hobby, etc. ad infinitum.

Even the Tax Court deemed only two factors to favor the Internal Revenue Service—8 and 9, and we've seen that nei-ther supported the court's determination that Roberts was a hobbyist until 2007. Numerous remarks in its opinion, moreover, support the existence of a profit motive, as when the court said that between 1999 and 2001—the period in which Roberts increased his stock of horses from 2 to 10—he was "enticed by the profit potential of racing more horses." Profit goes with businesses, not hobbies. The court also re-marked that "around the time petitioner bought the Morris

Street property [where he started his horse-racing enter-prise], he was contemplating a career change." A person de-ciding whether to take up a hobby is not "contemplating a career change." A hobby is not a career.

And remember the dinner that Roberts attended at the invitation of the thoroughbred horse-race association? About this event the Tax Court remarked that told by the associa-tion of "the potential financial gains associated with the ac-tivity," Roberts "was interested in the *financial prospect* of horse racing" (emphasis added). It was shortly after that that he bought his first two horses, yet as we noted in the preced-ing paragraph he was "enticed by the profit potential of rac-ing more horses." The court further remarked that "petition-er credibly testified that he spent significant effort and time to match the right horse to the right race. He spent this time matching each horse to a race *with the expectation of making a profit*" (emphasis added).

The court careens from profit motive to pleasure motive and back. All that emerges from the opinion and the record, so far as bears on profit motive or the absence thereof, is that Roberts enjoys his new career. But "a business will not be turned into a hobby merely because the owner finds it pleasurable; suffering has never been made a prerequisite to deductibility. Success in business is largely obtained by pleasurable interest therein." *Jackson v. Commissioner*, 59 T.C. 312, 317 (1972).

Considering that most commercial enterprises are not hobbies, the Tax Court would be better off if rather than wading through the nine factors it said simply that a busi-ness that is in an industry known to attract hobbyists (and horse racing is that business par excellence), and that loses

large sums of money year after year that the owner of the business deducts from a very large income that he derives from other (and genuine) businesses or from trusts or other conventional sources of income, is presumptively a hobby, though before deciding for sure the court must listen to the owner's protestations of business motive. For an analysis along these lines see our decision in *Estate of Stuller v. United States*, 811 F.3d 890, 896–98 (7th Cir. 2016).

The Tax Court's judgment, insofar as it upholds the deficiencies assessed against the petitioner by the Internal Revenue Service for business deductions in 2005 and 2006, is reversed with instructions to void the deficiencies.